**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ANDRE HARDIMAN,

Plaintiff,

v.

SCOTT DAVIS, *et al.*,

Defendants.

Case No. 3:23-CV-00584-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

[ECF Nos. 62, 70]

This case involves a civil rights action filed by Plaintiff Andre Hardiman ("Hardiman") against Defendants Scott Davis ("Davis"), Tim Garrett ("Garrett"), Kara LeGrand ("LeGrand"), Donald Southworth ("Southworth"), and Harold Wickham ("Wickham") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment.[2] (ECF No. 62.) For the reasons discussed below, the Court recommends Defendants' motion be granted.

## I. BACKGROUND

### A. Procedural History

Hardiman is an inmate in the custody of the Nevada Department of Corrections ("NDOC") housed at Lovelock Correctional Center ("LCC"). (ECF No. 8 at 1.) Hardiman is a practicing Muslim and filed a *pro se* civil rights complaint alleging that between November 2022 and August 2023 Defendants violated his Free Exercise rights by not allowing him to attend Jumu'ah on Friday afternoons in the chapel. (ECF No. 9 at 4.) The

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Hardiman opposed, (ECF No. 68), and Defendants replied, (ECF No. 71). Hardiman also filed a motion for summary judgment. (ECF No. 70.) However, Hardiman's motion does not actually argue he is entitled to summary judgment. Hardiman instead retitled his opposition to Defendants' motion and filed it as motion for summary judgment. The Court will therefore not separately address Hardiman's motion.

Court screened Hardiman's complaint pursuant to 28 U.S.C. §1915(a) and permitted four claims to proceed: (1) Defendants violated the Free Exercise Clause of the First Amendment; (2) Defendants violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (3) Defendants purposely treated Hardiman differently than other similarly situated inmates in violation of the Fourteenth Amendment's Equal Protection Clause; and (4) Defendants conspired to deprive Hardiman of equal protection of the laws in violation of 42 U.S.C. § 1985(3). (*Id.* at 10.)

### B. Factual Summary[3]

In December 2022, this Court entered a modified permanent injunction order requiring LCC to provide Jumu'ah services on Friday from 12:30 p.m. to 1:45 p.m. for all Muslim inmates. *Elmajzoub v. Davis*, 3:19-CV-00196-MMD-CSD at ECF No. 110 (D. Nev. Dec. 5, 2022). The order further specified that Jumu'ah services had to be held in the chapel for inmates classified as Level 1 but could be held "at another location at LCC" for inmates classified as Level 2 or 3.[4] *Id.* It is undisputed LCC provided Jumu'ah services on Fridays between 12:30 p.m. and 1:45 p.m. for all Muslim inmates during the relevant time period. (ECF Nos. 62 at 2-3; 62-2; 68 at 3.) Level 1 inmates were permitted to attend Jumu'ah in the chapel, while Level 2 and 3 inmates were permitted to attend in the activity room. (ECF Nos. 62 at 2-3; 62-2; 68 at 3.)

Between April 2021 and August 2023 Hardiman was classified as either a Level 2 or Level 3 offender, (ECF No. 70 at 99), and therefore could not attend Jumu'ah services in the chapel. In Hardiman's view, the activity room was not a suitable location for Jumu'ah services, and he filed numerous grievances to that effect. (*See* ECF No. 62-3.) In response, LCC staff explained Level 2 and 3 offenders had to use the activity room

---

[3] The facts presented herein are undisputed unless otherwise noted.

[4] Pursuant to Administrative Regulation ("AR") 516, all NDOC facilities are required to utilize an inmate classification system to encourage offenders to engage in work and programming while incarcerated. (ECF No. 62-4.) LCC implements AR 516 via Operational Procedure 516. (ECF No. 62-5.) Inmates are classified as Level 1, 2, or 3, with Level 3 being the most restrictive. (*Id.* at 3-6.)

because it would be inappropriate to let them mingle with Level 1 offenders in the chapel. (*Id.*) Hardiman eventually advanced to Level 1 and was permitted to attend Jumu'ah services in the chapel. (*Id.* at 15; ECF No. 70 at 96.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d

at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of their contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The nonmoving party "must come forth with evidence from which a jury could reasonably render a verdict in the nonmoving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*,

475 U.S. at 586-87.

## III. DISCUSSION

The Court will begin with Defendants Southworth, Garrett, and Wickham's argument they are entitled to summary judgment because they did not personally participate in any alleged violation. (ECF No. 62 at 18-20.)

### A. Personal Participation

"Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* To establish the necessary causal connection, the plaintiff must show the supervisor set "in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citation modified) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

With respect to grievances, the denial of a grievance ordinarily does not amount to personal participation. *McNeil v. Gittere*, 2023 WL 3615348, at *3 (D. Nev. 2023) (first citing *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); and then citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also May v. Williams*, 2012 WL 1155390, at *3 (D. Nev. 2012); *Gates v. LeGrand*, 2020 WL 3867200, at *5 (D. Nev. 2020); *Tipton v. Guice*, 2021 WL 76720, at *1 (D. Nev. 2021). However, if a prison official has the authority to grant the inmate's request but denies a constitutionally required request or is aware of a denial that constitutes a violation and fails to act, they are considered to have personally participated. *See Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012); *Blake v. Thomas*, 2024 WL 5205741, at *1 (9th Cir. 2024). If, on the other hand, the official has no authority to grant the request, denial of the grievance does not constitute personal participation. *Blake*, 2024 WL 5205741, at *1.

Here, Southworth, Garrett, and Wickham argue they are entitled to summary judgment because the extent of their participation in any alleged violation was responding to Hardiman's grievances. (ECF No. 62 at 18-20.) Hardiman does not address this argument in his opposition, instead relying on his underlying allegation the trio acquiesced in the alleged violations with their "copy and paste" responses to his grievances. (ECF No. 8 at 3.) The Court agrees with Southworth, Garrett, and Wickham. The record shows each defendant responded to Hardiman's grievances, (*see* ECF No. 62-3), but Hardiman offers no evidence or argument indicating any of the three were involved with religious programming at LCC. If anything, the available evidence undercuts Hardiman's allegations. Southworth stated in his discovery responses he "was not involved in the development of the chapel schedules at LCC" and "do[es] not make any religious policy at NDOC." (ECF No. 70 at 60, 65.) And Wickham stated in his he had "never been assigned to LCC." (*Id.* at 73.)

In short, because Hardiman offers no evidence from which a reasonable jury could find Southworth, Garrett, and Wickham personally participated in the alleged violations, the Court recommends summary judgment be granted in their favor. *See Jackson v. Nevada*, 2019 WL 6499106, at *6-*9 (D. Nev. Dec. 3, 2019) (granting summary judgment where evidence established only that the defendant denied plaintiff's grievance); *Tipton*, 2021 WL 76720, at *1 (same).

**B. Qualified Immunity**

Having found Southworth, Garrett, and Wickham did not personally participate in any alleged violations, the Court will next address whether Defendants Davis and LeGrand are entitled to qualified immunity. For purposes of this analysis the Court will assume Hardiman had a constitutional right to attend Jumu'ah services in the chapel, and Davis and LeGrand violated that right by requiring him to attend services in the activity room. Even accepting that as true, however, the Court recommends summary judgment be granted in Davis and LeGrand's favor because such right was not clearly established, thus entitling them to qualified immunity.

"Qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Gordon v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)); *see Hernandez v. City of San Jose*, 897 F.3d 1125, 1132-33 (9th Cir. 2018); *Reese v. County of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). "In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks omitted); *see also Smith v. Agdeppa*, 81 F.4th 994, 1001-02 (9th Cir. 2023); *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022)

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *White*, 580 U.S. at 78-79); *see also Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 825 (9th Cir. 2023); *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam); *Reese*, 888 F.3d at 1037. The reasonableness of the officer's conduct is "judged against the backdrop of the law at the time of the conduct." *Kisela*, 584 U.S. at 104 (citation modified).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (discussing the *Saucier* analysis). Under this analysis, "qualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (citation modified); *see Wood v. Moss*, 572 U.S. 744, 757 (2014) ("The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the

official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011))); *Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022); *Ballentine*, 28 F.4th at 61. Courts may address these elements in whatever order "will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. at 240-42.

First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201; *see also Scott v. Harris*, 550 U.S. 372, 377 (2007); *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam); *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Seidner*, 39 F.4th at 595; *Ballentine*, 28 F.4th at 61. "If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018).

Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201; *see also Brosseau*, 543 U.S. at 199–201; *Hope*, 536 U.S. at 739; *Seidner*, 39 F.4th at 595. Even if the violated right was clearly established at the time of the violation, it may be "difficult for [the defendant] to determine how the relevant legal doctrine" applies to the factual situation at hand; thus, if a defendant's "mistake as to what the law requires is reasonable" they are "entitled to the immunity defense." *Saucier*, 533 U.S. at 205; *see also Estate of Ford*, 301 F.3d at 1050; *cf. Inouye v. Kemna*, 504 F.3d 705, 712 n.6 (9th Cir. 2007) (explaining that the inquiry into the reasonableness of the defendant's mistake is not the "third" step in the *Saucier* analysis, but rather, part of the second step of *Saucier*'s two-step analysis).

Here, the Court's analysis will focus on the second step — whether it was clearly established that inmates classified at a higher risk level have the right to attend religious services with minimally-classified inmates when they have access to the same services in an alternate location. Hardiman cites to several cases to support his argument that the right was clearly established. First, Hardiman cites to *Holt v. Hobbs*, a U.S. Supreme Court case addressing the propriety of a prison's grooming policy. 574 U.S. 352 (2015).

Second, he cites to *Hartmann v. California Department of Corrections and Rehabilitation*, a Ninth Circuit case addressing whether a prison was required to hire a Wiccan chaplain. 707 F.3d 1114 (9th Cir. 2013). Lastly, Hardiman cites to *Shakur v. Schriro*, a Ninth Circuit case addressing an inmate being denied a Kosher diet. 514 F.3d 878 (9th Cir. 2008).

None of these cases help Hardiman, however, because they address rights not at issue in this case. For a right to be clearly established there must be precedent that places the "the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). In other words, the right established by the precedent must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*per curiam*)). None of the cases Hardiman cites would have led LeGrand and Davis to understand they were violating Hardiman's rights by requiring him to attend Jumu'ah in a separate location from Level 1 offenders.[5] Nor has the Court's research revealed any such case.

Because Hardiman has failed to carry his burden and show Davis and LeGrand violated clearly established law, the Court finds they are entitled to qualified immunity and recommends summary judgment be granted in their favor.[6]

///

///

///

---

[5] This is particularly so considering the religious services schedule Hardiman complains of was drafted in direct response to this Court's amended permanent injunction, which explicitly stated "[s]ervice for Level 2 and Level 3 Muslim inmates must be held at the Chapel *or at another location at LCC*." *Elmajzoub v. Davis*, 3:19-CV-00196-MMD-CSD at ECF No. 110 (D. Nev. Dec. 5, 2022) (emphasis added). It is difficult to conceive how LCC officials could violate clearly established law by following an order of the Court.

[6] Assuming *arguendo* Garrett, Southworth, and Wickham had personally participated in any alleged violations, they too would be entitled to qualified immunity for the same reasons LeGrand and Davis are. There was no clearly established law indicating their grievance responses were furthering a violation of Hardiman's rights.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that summary judgment be granted in favor of Defendants on all of Hardiman's claims and this case be closed.[7]

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 62), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Hardiman's motion for summary judgment, (ECF No. 70), be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: July 10, 2026.

**UNITED STATES MAGISTRATE JUDGE**

---

[7] Although the Court does not reach this issue, it notes Hardiman's RLUIPA claim may be barred as a matter of law after the U.S. Supreme Court's decision in *Landor v. Louisiana Department of Corrections*, 609 U.S. ___, 2026 WL 1791277 (2026). There, the Court held RLUIPA does not provide a cause of action unless the individual officers being sued consented to be sued. *Id.* at *6.