UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ANDRE HARDIMAN,

Plaintiff,

v.

SCOTT DAVIS, *et al.*,

Defendants.

Case No. 3:23-cv-00584-MMD-CLB

ORDER

## I. SUMMARY

Following screening, *pro se* Plaintiff Andre Hardiman, a practicing Muslim, was allowed to assert claims arising out of Defendants' alleged interference with his right to exercise his faith by attending Jumu'ah services on Friday afternoons.[1] (ECF No. 9) Before the Court is United States Magistrate Judge Carla L. Baldwin's Report and Recommendation (ECF No. 75 ("R&R")), recommending that the Court grant Defendants' motion for summary judgment (ECF No. 62) and deny Plaintiff's motion for summary judgment (ECF No. 70). Plaintiff filed an objection (ECF No. 76 ("Objection")) to which Defendants responded (ECF No. 77). For the reasons discussed below, the Court agrees with Judge Baldwin and adopts the R&R.

## II. RELEVANT BACKGROUND[2]

Plaintiff was housed in "Levels 2 & 3" at Lovelock Correctional Center ("LCC") between November 2022 and August 2023. (ECF No. 8 at 2-3.) Plaintiff is a practicing Muslim, and the tenets of his faith required him to attend weekly Jumu'ah services on

[1]Defendants are: Chaplain Scott Davis; Kara LeGrand, Assistant Warden of Program; D. Southworth, Correctinoal Caseworker Specialist III; Tim Garrett, Warden; and Harold Wikham, Grievance Coordinator. (ECF Nos. 9 at 3; 8 at 1-2.)

[2]The Court incorporates and adopts the background facts recited in the R&R. (ECF No. 75 at 1-3.) The Court additionally recites facts that are relevant to the pending motions and Objection.

Fridays at 12:15 p.m. (*Id.* at 2-4.)

During that time frame, LCC was subject to a permanent injunction that this Court issued in *Elmajzoub v. Davis*. *See* Case No. 3:19-cv-00196-MMD-CSD, 2022 WL 17824021 (D. Nev. Nov. 9, 2022) ("Permanent Injunction").) The Permanent Injunction required Jumu'ah services to be scheduled every Friday from 12:30 p.m. to 1:45 p.m. and "all LCC Muslim inmates are allowed to attend in congregation unless" certain exceptions apply, including capping attendance at 100 inmates. *Id.* at 5. On December 5, 2022, the Court modified the Permanent Injunction in terms of the location of Jumu'ah services: "Services for Level 1 Muslim inmates must be held at the Chapel. Service for Level 2 and Level 3 Muslim inmates must be held at the chapel *or* at another location at LCC." *Elmajzoub v. Davis*, Case No. 3:19-cv-00196-MMD-CSD (D. Nev. Dec. 5, 2022) (ECF No. 110) ("Modified Permanent Injunction"). As noted in the R&R, there is no dispute here that LCC provided Jumuh'ah services in compliance with the Modified Permanent Injunction during the relevant time period. (ECF No. 75 at 2.)

Between April 2021 and August 2023, Plaintiff was classified as either a Level 2 or Level 3 offender. (ECF No. 70 at 99.) Plaintiff could not attend services in the chapel until he eventually advanced to Level 1. (*Id.* at 96). Plaintiff filed grievances, challenging the activity room as a suitable location for services. (ECF No. 62-3.) LCC staff responded that Level 2 and Level 3 offenders could not mingle with Level 1 offenders in the chapel. (*Id.*)

In his first amended complaint, Plaintiff alleges that Assistant Warden of Programs Kara LeGrand and Chaplain Scott Davis created a chapel schedule with the intent to deprive "Islam practicing inmates" housed in low level units of the right to exercise their faith by attending Jumu'ah at the time prescribed by their faith, Friday afternoons. (ECF No. 8 at 3.) Plaintiff further alleges that all Defendants conspired to deprive Muslim inmates of the right to participate in Jumu'ah by agreeing that Level 2 and 3 inmates could not attend Jumu'ah on Friday afternoons. (*Id.* at 4.) The Court permitted Plaintiff to proceed on three claims, alleging First Amendment Free Exercise Clause and Religious

Land Use and Institutionalized Persons Act violations, equal protection violations, and 28 U.S.C § 1985(3) conspiracy. (ECF No. 9 at 10.)

Judge Baldwin recommended granting Defendants' motion and denying Plaintiff's motion for summary judgment on two grounds: (1) Defendants Southworth, Garrett and Wickham are entitled to summary judgment because the undisputed evidence shows they did not personally participate in any alleged constitutional violations; and (2) Defendants are entitled to qualified immunity because Plaintiff cannot show the constitutional right at issue was clearly established.[3] (ECF No. 75 at 5-9.) In doing so, the Magistrate Judge did not address the other arguments in the parties' motions. For example, Defendants' motion argue that they are entitled to summary judgment on the merits of Plaintiff's claims—that Plaintiff cannot demonstrate a constitutional violation. (ECF No. 62 at 7-17.) Plaintiff's motion argues that he has demonstrated Defendants violated his constitutional rights. (ECF No. 70 at 11-22.)

## III. DISCUSSION

Plaintiff raises three objections to the R&R. (ECF No. 76.) The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here, a party timely objects to a magistrate judge's Report and Recommendation, the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* On de novo review, the Court overrules Plaintiff's Objection and adopts the R&R.

First, Plaintiff challenges Judge Baldwin's finding that Plaintiff offered no evidence that Defendants Southworth, Garrett and Wickham were personally involved with religious programming at LCC. Plaintiff contends that a "few initial grievances (Nov. 11, 18 & 25 of

---

[3]The R&R addressed qualified immunity with respect to Defendants Davis and LeGrand because Judge Baldwin found Defendants Garrett, Southworth and Wickham did not personally participated in any alleged violations. (ECF No. 75 at 6.) However, Judge Baldwin went on to clarify that even if these Defendants had personally participated in any alleged constitutional violation, they would similarly be entitled to qualified immunity. (*Id.* at 9, n. 6.)

2022 & Dec. 2 of 2022)" occurred before the Modified Permanent Injunction was issued. (ECF No. 76 at 2.) But the Magistrate Judge found lack of participation because Defendants Southworth, Garrett and Wickham had no authority to grant Plaintiff's grievances (ECF No. 75 at 5-6); and not due to compliance with the Modified Permanent Injunction as Plaintiff insists in his Objection (ECF No. 76 at 2).

Second, Plaintiff appears to take issue with the classifications and alternate location for Jumu'ah services between Level 1 inmates and Level 2 and 3 inmates at LCC, because according to Plaintiff, "LCC only houses medium custody offenders." (*Id.* at 4.) But Plaintiff does not dispute that this medium custody facility contained three behavior-based classification levels establishing the extent of governance over inmate privileges, including freedom of movement. (*Id.* at 3.) Nor does Plaintiff dispute he was classified as a Level 2 or 3 inmate during the relevant time period. Plaintiff additionally argues the Magistrate Judge incorrectly rejected the authorities he cited as support that the right here is clearly established. (*Id.* at 4.) However, Judge Baldwin correctly found that the cases Plaintiff cited do not support his argument that it was clearly established that inmates classified at a higher risk level have the right to attend religious services with inmates classified as a lower risk level when they have access to the same services in an alternate location. (ECF No. 75 at 8.)

Finally, Plaintiff argues that the Magistrate Judge erred in failing to address his arguments on the merits, including that the challenged regulation lacks a penological basis and how Defendants' policy imposed a substantial burden on his religious exercise. (ECF No. 76 at 5.) As discussed, the Magistrate Judge did not address either party's arguments as to the merits—whether Plaintiff's constitutional right was violated—in addressing qualified immunity. Courts utilize a two-prong test to determine whether qualified immunity applies: "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). District courts have discretion to address these prongs in any order. *See Pearson*, 555 U.S. at

236. Here, Judge Baldwin found qualify immunity applied based on the second prong, finding the right at issue was not clearly established, and did not need to address the first prong of whether Plaintiff's constitutional right was violated. (ECF No. 75 at 8-9.)

In sum, the Court agrees with Judge Baldwin's R&R and overrules Plaintiff's Objection.

## IV. CONCLUSION

The Court notes that the parties made arguments and cited cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Judge Baldwin's Report and Recommendation (ECF No. 75) is accepted and adopted in full.

It is further ordered Plaintiff's Objection to the R&R (ECF No. 76) is overruled.

It is further ordered that Defendants' motion for summary judgment (ECF No. 62) is granted.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 70) is denied.

The Clerk of Court is kindly directed to enter judgment in favor of Defendants in accordance with this order and close this case.

DATED THIS 19th Day of November 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE